IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| THOMAS JOHN KARL | : | CIVIL ACTION |
| | : | |
| v. | : | NO. 15-2542 |
| | : | |
| MARINA BELEN DOMINGUEZ | : | |
| CIFUENTES, OLGA CIFUENTES and | : | |
| JULIO CESAR DOMINGUEZ | : | |

### MEMORANDUM OPINION

Savage, J.                                                                                                                August 13, 2015

      This action is one of several legal proceedings in the United States and Argentina stemming from a prolonged custody dispute and the turbulent relationship of the parents of two minor children. The plaintiff, Thomas John Karl ("Karl"), has filed a complaint under the Parental Kidnapping Prevention Act[1] and the International Child Abduction Remedies Act.[2] He also filed a motion for a *ne exeat* order. Essentially, he seeks to restrain his wife, Marina Belen Dominguez Cifuentes ("Cifuentes"), and her parents, Olga Cifuentes and Julio Cesar Dominguez, from leaving the United States with his and Cifuentes' two minor children. To prevent her from leaving the United States, he asks that we order Cifuentes to turn over her American and Argentinian passports.

      Because we conclude that abstention under *Younger v. Harris*, 401 U.S. 37, 44 (1971), is appropriate in light of the ongoing state court custody proceeding involving

---

[1] 28 U.S.C. § 1738A.

[2] 42 U.S.C. § 11601 *et seq.*

Karl, Cifuentes and their two children, we shall deny Karl's motion and dismiss this action.[3]

## Factual Background

Karl, who is American, and Cifuentes, who is Argentinian, met in January of 2008 on a flight from Uruguay to Buenos Aires, Argentina.[4] The pair began a relationship.[5] Five months later, in June, Cifuentes came to the United States to meet Karl's two older children, brothers and sisters.[6] She remained in the country for a couple of months.[7]

In August of 2008, Cifuentes became pregnant with the couple's first child, Maximino.[8] In September of 2008, the couple got married in Las Vegas.[9] However, that marriage was annulled because Karl was still legally married to his first wife.[10] During the pregnancy, Cifuentes returned to Argentina alone and the couple flew back and forth between the United States and Argentina until December of 2008.[11] After she left the United States that December, the pair separated.[12]

---

[3] In denying Karl's motion, we also dissolve the temporary restraining order entered on May 21, 2015 (Doc. No. 9).

[4] Hr'g Tr. at 21:16-20.

[5] Hr'g Tr. at 21:21-22:1.

[6] Hr'g Tr. at 22:5-16.

[7] Hr'g Tr. at 22:11-12.

[8] Hr'g Tr. at 22:20-21.

[9] Hr'g Tr. at 22:21-23:3.

[10] Hr'g Tr. at 22:20-23:3; 76:9-77:6.

[11] Hr'g Tr. at 23:22-24:4.

[12] Hr'g Tr. at 24:23-25:2.

Due to complications with her pregnancy, Cifuentes returned to the United States in February and April of 2009 for medical treatment.[13] She and Karl visited two doctors in Philadelphia, who recommended that she not fly back to Argentina for fear of harming the couple's unborn child.[14] Because Cifuentes was reluctant to heed the doctors' recommendation, Karl obtained a *ne exeat* order from the United Stated District Court in the Southern District of New York, preventing her from leaving the country.[15]

Even though Karl had her passport, Cifuentes was able to return to Argentina using travel documents she obtained from the Argentine Consulate in New York.[16] Once in Argentina, she did not respond to Karl's repeated attempts to contact her by phone, e-mail and through her friends and family.[17] In May of 2009, upon learning that Cifuentes was due to deliver their son, Karl flew to Argentina.[18] Maximino was born on May 9, 2009.[19] Karl did not observe the birth, but was present at the hospital.[20] He and Cifuentes saw their son for the first time that afternoon.[21]

After Maximino's birth, Cifuentes and her parents prevented Karl from seeing the child for approximately six months.[22] In December of 2009, around the Christmas

---

[13] Hr'g Tr. at 25:2-23.

[14] Hr'g Tr. at 25:2-26:15; 27:18-24.

[15] Hr'g Tr. at 26:16-27:15; Pl.'s Ex. A (April 28, 2009 *Ne Exeat* Order).

[16] Hr'g Tr. at 29:25-31:5.

[17] Hr'g Tr. at 31:9-18.

[18] Hr'g Tr. at 31:6-18; 34:24-35:6.

[19] Hr'g Tr. at 32:10-11.

[20] Hr'g Tr. at 32:5-12.

[21] Hr'g Tr. at 32:9-20.

[22] Hr'g Tr. at 37:1-22; 46:8-16.

holiday, the couple reconciled and spent a couple of weeks together.[23] On January 20, 2010 and again in February, Cifuentes struck Karl while he was holding their son and accused him of having an affair.[24] On February 26, 2010, the Argentinian court in Buenos Aires awarded Karl provisional custody of Maximino.[25]

Karl and Cifuentes' daughter, Triana, was born on September 3, 2010.[26] As she had done with Maximino, Cifuentes initially prevented Karl from seeing Triana.[27] Karl obtained an Argentinian court order to visit his daughter.[28]

In November of 2010, after Karl had been granted primary custody of Maximino, Cifuentes took the child away from the court-appointed visitation supervisor. Karl did not know his son's whereabouts for a month.[29] Karl then filed civil and criminal charges against Cifuentes in Argentina.[30]

The couple reconciled once again.[31] On January 10, 2011, they were legally married.[32] They remained together for two years in Argentina.[33] On December 22, 2013, based on what Karl characterized a "deal," the couple returned to the Philadelphia

---

[23] Hr'g Tr. at 45:18-46:21.

[24] Hr'g Tr. at 47:4-25.

[25] Pl.'s Ex. E (February 26, 2010 Custody Order); Hr'g Tr. at 38:11-20.

[26] Hr'g Tr. at 45:9-10.

[27] Hr'g Tr. at 48.

[28] Hr'g Tr. at 48:20-49:1.

[29] Hr'g Tr. at 43:3-11; 44:13-17.

[30] Hr'g Tr. at 43:23-44:17.

[31] Hr'g Tr. at 77:17-22.

[32] Hr'g Tr. at 77:17-22.

[33] Hr'g Tr. at 52:10-15.

area along with Triana and Maximino.[34]  As part of the deal, Karl purchased a new multi-million dollar home for the family.[35]  He also paid to relocate Cifuentes' parents and four dogs.[36]  According to Karl, things were fine for a while until Cifuentes started going out without seeing the children off to bed and remaining out until midnight or one a.m.[37]

On March 27, 2015, Karl, Cifuentes and their two children went on a family ski vacation to Colorado.[38]  On the night of March 31, while Karl was preparing dinner, Cifuentes grabbed their daughter Triana and threw her on a couch because she was angry at the child for using her cell phone.[39]  The child placed herself into a fetal position.[40]  Cifuentes then threw her phone against the wall, breaking it.[41]  When Karl refused to give her his phone, she pushed him against the wall, knocking his head.[42]  Karl fled the room, went to the hotel reception desk, and asked that 911 be called.[43]

---

[34] Hr'g Tr. at 52:10-53:3.

[35] Hr'g Tr. at 53:1-8.

[36] Hr'g Tr. at 52:10-25.

[37] Hr'g Tr. at 53:20-54:3.

[38] Hr'g Tr. at 54:4-16.

[39] Hr'g Tr. at 53:20-22; 54:4-16.

[40] Hr'g Tr. at 56:3:-7.

[41] Hr'g Tr. at 56:7-10.

[42] Hr'g Tr. at 56:19-24.

[43] Hr'g Tr. at 57:1-6.

The police arrested and charged Cifuentes with harassment and child abuse.[44] On April 1, 2015, the Colorado Eagle County Court issued a protection from abuse order that forbade Cifuentes from having contact with Karl, Maximino and Triana.[45]

When Karl returned to his home in Pennsylvania on April 3, he found that his bedroom had been ransacked.[46] Maximino and Triana's Argentinian passports were missing.[47] Karl immediately reported the incident to the police.[48]

After this incident, Karl became "extremely concerned" that Cifuentes would try to take the children to Argentina.[49] His concern was based on Cifuentes' past behavior which included preventing him from seeing his children, the missing passports, charges made by Cifuentes on their American Express card paying various bills in Argentina, and visits made by Cifuentes and her parents to the Argentine consulate in New York on February 13 and February 25.[50] His concern was piqued when Cifuentes, despite the stay away order, called the children's school twice, inquiring as to whether they were still attending the school.[51]

---

[44] Hr'g Tr. at 57:9-10.

[45] Pl.'s Ex. F (April 1, 2015 Protection Order); Hr'g Tr. at 58:1-8.

[46] Hr'g Tr. at 58:21-59:5.

[47] Hr'g Tr. at 59:6-11.

[48] Hr'g Tr. at 61:8-14.

[49] Hr'g Tr. at 61:25-62:5.

[50] Hr'g Tr. at 61:20-62:11; 64:12-20.

[51] Hr'g Tr. at 67:2-8.

The children's passports were eventually recovered after the police contacted a friend of Cifuentes.[52]  Currently, as ordered by the Delaware County Court of Common Pleas, they are being held by Karl's attorney, Bernard Berman.[53]

On April 9, 2015, before he filed this action, Karl had filed an action in the Delaware County Court of Common Pleas against Cifuentes.  He filed an emergency petition for custody of the children and an emergency petition for the return of the children's passports.[54]  On April 14, 2015, the state court issued a temporary protection from abuse order excluding Cifuentes from the family home and preventing her from having any contact with her children.[55]  The order temporarily granted Karl sole physical custody of the children.[56]

Karl also filed two separate actions in the Delaware County Court of Common Pleas against Cifuentes' parents requesting an order of protection.  On April 14, the state court issued protection orders against Olga Cifuentes and Julio Cesar Dominguez. The grandparents were barred from having any contact with Karl, Maximino and Triana.[57]

---

[52] Hr'g Tr. at 71:11-19.

[53] April 24, 2015 Custody Order; Hr'g Tr. at 71:11-19.

[54] *See* Pl.'s Ex. R (April 14, 2015 Protection from Abuse Order).

[55] *Id.*; Hr'g Tr. at 69:1-7.

[56] Hr'g Tr. at 70:5-12.

[57] *See* Pl.'s Ex. R (April 14 Protection from Abuse Order against Olga Cifuentes); *id.* (April 14, 2015 Protection from Abuse Order against Julio Cesar Dominguez).

**Procedural History**

On May 8, 2015, Karl filed a complaint in this court against Cifuentes and her parents. He alleged that the defendants were attempting to kidnap his children and take them to Argentina.[58] He requested an order granting him primary custody of the children and directing the United States Marshal to "seize the person of Marina, Olga and Julio and bring them . . . before this Court[.]"[59]

On May 20, 2015, invoking the Uniform Child Custody Jurisdiction Act,[60] the Parental Kidnapping Prevention Act[61] and the Hague Convention on the Civil Aspects of International Child Abduction,[62] Karl moved for an *ex parte ne exeat* order.[63] On May 21, 2015, we entered an order temporarily restraining Cifuentes from leaving the jurisdiction with the two minor children, and scheduled a hearing to show cause why a preliminary injunction should not issue.[64] An evidentiary hearing was held on June 4, 2015.

---

[58] *See* Compl. ¶ 41.

[59] Compl. at 8.

[60] 23 Pa. C.S.A. § 5401.

[61] 28 U.S.C. § 1738A.

[62] Congress passed the International Child Abduction Remedies act, codified at 42 U.S.C. § 11601 *et seq.,* to establish procedures to implement the Hague Convention on the Civil Aspects of International Child Abduction in the United States. 42 U.S.C. § 11601(b)(1).

[63] Doc. No. 6. A writ *ne exeat*, which means "that he not depart", is an order forbidding a party from leaving the jurisdiction of the court or from removing a child from the jurisdiction. Black's Law Dictionary (10th ed. 2014); *Elkay Steel Co. v. Collins*, 141 A.2d 212, 216 (Pa. 1958).

[64] Doc. No. 9.

**Discussion**

Although Cifuentes did not specifically raise the issue of *Younger* abstention, her counsel implicitly argued it. He suggests that this matter should be addressed in the state court where there are ongoing proceedings.[65] In any event, *Younger* abstention may be raised *sua sponte*. *See, e.g., O'Neill v. City of Phila.*, 32 F.3d 785, 786 n.1 (3d Cir. 1994); *Parker v. Shefsko*, No. Civ.A. 98-5811, 1999 WL 248316, at *1 n.1 (E.D. Pa. Apr. 23, 1999).

Federal courts may abstain from deciding cases where to do otherwise would interfere with ongoing state court proceedings involving the same subject matter in only three categories of "exceptional" cases. *Sprint Communications, Inc. v. Jacobs*, ---- U.S. ----, 134 S.Ct. 584, 588 (2013). They are: (1) criminal proceedings; (2) civil enforcement proceedings that are "akin" to criminal proceedings; and (3) "civil proceedings involving certain orders that are uniquely in furtherance of the state courts' ability to perform their judicial functions." *Id.* (quoting *New Orleans Public Service, Inc. v. Council of City of New Orleans*, 491 U.S. 350, 373 (1989)). If the state court proceeding does not fall within any of these categories of exceptional cases, *Younger* abstention is not warranted.

If the case falls into an exceptional category, we must then determine whether it satisfies the three *Middlesex* conditions for *Younger* abstention.[66] *Gonzalez v. Waterfront Comm'n of New York Harbor*, 755 F.3d 176, 182 (3d Cir. 2014). These

---

[65] Hr'g Tr. at 15:24-16:3.

[66] Before the *Sprint* decision, courts, including the Third Circuit, interpreted the three *Middlesex* conditions as the only requirements for abstention. In *Sprint*, the Supreme Court explicitly stated that "the three *Middlesex* conditions . . . [are] not dispositive; they [are], instead, *additional* factors appropriately considered by the federal court before invoking *Younger*." *Sprint*, 134 S.Ct. at 593 (emphasis in original).

requirements are: (1) the state judicial proceeding is ongoing; (2) it implicates an important state interest; and (3) it provides an adequate opportunity to raise any federal claims. *Middlesex County Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982); *Anthony v. Council*, 316 F.3d 412, 418 (3d Cir. 2003).

Here, this case fits squarely into the third category of exceptional cases. Custody cases are particularly appropriate for *Younger* abstention. *See Mikhail v. Khan,* 991 F. Supp. 2d 596, 627 (E.D. Pa. 2014) (finding that the third *Sprint* category applies to a state court child custody proceeding). The state court custody proceeding has resulted in a temporary order granting Karl physical custody of the children and escrowing the children's passports.[67] Deciding the federal case would interfere with an order that is uniquely critical to the state court's ability to perform its judicial function, that is, to decide what is in the best interests of the children. *See Arnold v. Arnold*, 847 A.2d 674, 677 (Pa. Super. Ct. 2004) ("The Commonwealth has a duty of paramount importance . . . to protect the child's best interests and welfare.") (citation omitted).

Finding that this case falls within the third category of exceptional cases does not end our analysis. We now consider whether the three *Middlesex* factors are satisfied. *See Gonzalez*, 755 F.3d at 182.

First, there is an ongoing state court proceeding in the Delaware County Court of Common Pleas concerning the welfare and custody of the couple's children and Cifuentes' right to see them.[68] The issue of the children's passports was raised and

---

[67] Hr'g Tr. at 16:9-18; 70:5-17; April 24, 2015 Custody Order, *Thomas Karl v. Marina Dominguez Cifuentes*, No. 2015-003199 (Del. Cnty. Ct. Com. Pl. April 9, 2015).

[68] Hr'g Tr. at 68:20-70:12. *See also Thomas Karl v. Marina Dominguez Cifuentes*, No. 2015-003199 (Del. Cnty. Ct. Comm. Pl. April 9, 2015).

addressed in that proceeding. Indeed, the state court ordered that the passports be held by Karl's counsel until ordered otherwise.[69] The proceeding is undoubtedly judicial in nature. It is also pending and was pending when this action was filed. The state custody hearing resumed recently, on July 28, 2015.[70]

Second, important state interests are involved. It is well-settled that "[f]amily relations are a traditional area of state concern." *Moore v. Sims*, 442 U.S. 415, 435 (1979); *Wattie-Bey v. Attorney General's Office*, 424 F. App'x 95, 97 (3d Cir. 2011). State courts have a compelling interest in the welfare of their minor citizens and family relations. Divorce and child custody have traditionally been addressed, almost exclusively, by state courts. *See, e.g., Matusow v. Trans-County Title Agency, LLC*, 545 F.3d 241, 244 (3d Cir. 2008) (observing that child custody decrees remain outside federal jurisdiction). The state courts are better equipped and have the expertise to decide family law issues. Therefore, the state court proceeding implicates critical state interests that are best addressed by the state court.

Third, the state court proceeding is an adequate forum in which Karl can pursue the relief he seeks in the federal court. Indeed, the state court proceeding has resulted in a temporary order granting Karl physical custody of the children and retention of the children's passports by Mr. Berman.[71]

The state court is competent to consider and apply the Uniform Child Custody Jurisdiction Act, the Parental Kidnapping Prevention Act and the Hague Convention on

---

[69] *See* April 24, 2015 Custody Order at ¶ 6.

[70] *See* Docket, *Thomas Karl v. Marina Dominguez Cifuentes*, No. 2015-003199 (Del. Cnty. Ct. Comm. Pl. April 9, 2015).

[71] Hr'g Tr. at 16:9-18; 70:5-17; April 24, 2015 Custody Order.

the Civil Aspects of International Child Abduction. If the federal court were to intervene in the parties' ongoing custody battle, it would signal that the state court was not competent to decide those issues which implicate strong state interests. We are confident that the state court can adequately decide any federal claims regarding the passports.

There is no evidence of bad faith or any other special circumstance that counsels against abstention. *Anthony*, 316 F.3d at 418. At the hearing, Karl expressed genuine concern for the safety and welfare of the couple's two children. Given the history of the couple's stormy relationship, his bringing the custody action in state court was not done in bad faith.

Regarding Cifuentes' parents, Olga Cifuentes and Julio Cesar Dominguez, Karl did not present sufficient evidence to support the seizure of their passports at the hearing. Nor did he argue that their passports should be seized. Karl did not mention Olga Cifuentes or Julio Cesar Dominguez in his post-hearing memorandum of law. Therefore, Karl has waived his claims against them.

## Conclusion

Because the requirements for *Younger* abstention are met, we conclude that abstention is warranted. Therefore, we shall dismiss this action in light of the ongoing state court custody proceeding.